UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LINDA M. PORTWOOD,

    Plaintiff,

v.                                       Civil No. 04-CV-10292-BC

COMMISSIONER OF                 DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                  MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED, that the FINDINGS OF THE COMMISSIONER BE REVERSED, and the case REMANDED for an award of benefits.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 52 years of age at the time of the most recent administrative hearing and has completed a high school education, as well as schooling for a certified nursing assistant. (Tr. at 227.) Plaintiff's relevant work history included 30 years of work as a nursing assistant at various nursing homes. (Tr. at 228-30.)

Plaintiff filed the instant claim on November 27, 2001, alleging that she became unable to work on May 23, 2001. (Tr. at 51-53.) The claim was denied at the initial stage.[1] (Tr. at 35.) In denying Plaintiff's claim, the Defendant Commissioner considered muscle ligament disorder, fascia, and anxiety related disorders as possible bases of disability. (*Id.*)

On August 25, 2003, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) John A. Ransom, who considered the case *de novo*. In a decision dated November 12, 2003, the ALJ found that Plaintiff was not disabled. (Tr. at 19-30.) Plaintiff requested a review of this decision on November 24, 2003. (Tr. at 16-18.)

The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[2] (AC-1-2, Tr. at 208-23), the Appeals Council, on August 20, 2004, denied

---

[1]The Commissioner designated this claim as a "Disability Redesign Prototype Case." (Tr. at 35.) As a result, Plaintiff's claim was not given an administrative reconsideration. Instead, after her claim was initially denied, she was directed to request an administrative hearing, which she did through counsel. (Tr. at 16-17.)

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Plaintiff's request for review. (Tr. at 9-14.) On October 19, 2004, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen,* 800 F.2d at 545 (quoting *Baker v. Heckler,* 730

F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.    Governing Law**

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative

review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

**D.  Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was referred to Dr. Gavin Awerbuch in April of 2001 for neurological consultation. Dr. Awerbuch reported the presence of symptoms consistent with fibromyalgia,[3] and that her symptoms also suggested mitral valve prolapse and cardiac arrhythmia, cervical neuritis, cerebrovascular disease and possible sleep apnea. The doctor ordered various tests, prescribed medications, and recommended regular exercise and physical therapy. (Tr. at 143.)

Plaintiff was seen on May 31, 2001, for a follow-up examination. Dr. Awerbuch reported that Plaintiff's test results showed that she did have obstructive sleep apnea with limb movement disorder. An EMG was negative, and physical examination was consistent with the results earlier

---

[3]Fibromyalgia is one of a group of rheumatic diseases not affecting the joints, characterized by dull and persistent pain, tenderness, and stiffness of muscles, tendons or nearby soft tissues. The symptoms can be due to overuse of muscles or be secondary to another underlying disorder. 2 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE F-81.

described. Dr. Awerbuch continued to diagnose fibromyalgia, chronic vertigo, mitral valve prolapse, obstructive sleep apnea, and periodic leg movements. (Tr. at 135.)

Plaintiff was next seen by Dr. Awerbuch on August 30, 2001. The doctor noted that ENG testing was abnormal, indicating a lesion among the nerves of the right labyrinth, or the vestibular nerve (Tr. at 136), and that a polysomnogram indicated irregularities in sleep consistent with sleep apnea. (Tr. at 137.) The doctor felt that Plaintiff was suffering from vertigo with abnormal ENG, bilateral carpal tunnel syndrome, mitral valve prolapse, fibromyalgia, and obstructive sleep apnea with periodic limb movements. (Tr. at 134.)

On January 17, 2002, Plaintiff was seen by Dr. Awerbuch for myofascial pain, sleep problems, cognitive deficits and fatigue. Plaintiff reported that she needed to lay down several times a day, that her hands go numb, and that she had limited ability to function. She reported having had radioactive iodine treatment in the past and that she never had her thyroid rechecked. On examination, the doctor noted fullness over the left side of her neck and 12 trigger points consistent with fibromyalgia. Plaintiff's heart showed regular rhythm with midsystolic click. Dr. Awerbuch diagnosed fibromyalgia, chronic vertigo, mitral valve prolapse, sleep apnea, fatigue, and cognitive impairments. Plaintiff was given sample medications. Dr. Awerbuch advised Plaintiff to limit her activities, "avoid driving, dangerous activities, climbing, and working at heights, etc. due to her vertigo and fatigue." (Tr. at 203.)

On February 6, 2002, Plaintiff underwent an Adult Mental Status Examination, performed by Dr. Laura Morris, Ph.D., at the request of the Disability Determination Service. The examination resulted in a diagnoses of: Axis I, panic disorder and depressive disorder; Axis II, compulsive personality traits; Axis III, fibromyalgia with muscle spasms; Axis IV, occupational problems, not working due to medical condition, economic problems, limited financial resources,

problems related with the social environment and limited social contacts; and Axis V, a GAF[4] score of 52. Plaintiff reported that she had been released from her most recent job due to her inability to meet their expectations. Her prognosis was "guarded." (Tr. at 156-61.)

Plaintiff was examined by Dr. Awerbuch on April 22, 2002, with complaints of chronic pain, fatigue, and recurrent bouts of vertigo. Examination again revealed multiple tender trigger points consistent with fibromyalgia, and regular heart rhythm with a soft mitral click. Dr. Awerbuch diagnosed chronic vertigo, bilateral carpal tunnel syndrome, mitral valve prolapse, fibromyalgia, sleep apnea, and cognitive impairments. Plaintiff was given medication samples and advised to continue using carpal tunnel splints. Dr. Awerbuch stated that "[d]ue to her multiple problems, I do not feel that she is capable of gainful employment on a ongoing basis. She needs to lay down and rest during the day. She should take caution when performing activities where she could potentially harm herself or others if she were to [lose her balance]." (Tr. at 202.)

Plaintiff was again seen on August 19, 2002, with complaints of muscle spasms in her neck, arms, and legs. She stated that she had tingling and numbness in her hands and that the vertigo was somewhat better. On examination, Tinel's sign[5] was positive, and hand grip was reduced. Plaintiff had spasms in the neck and shoulder, could not squat, and had trouble raising her arms above shoulder level. Dr. Awerbuch diagnosed chronic vertigo, bilateral carpal tunnel syndrome,

---

[4]"Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact and in predicting outcome. The reporting of overall [psychological, social, and occupational] functioning on Axis V can be done using the Global Assessment of Functioning (GAF) Scale." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000). A GAF Scale of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with co-workers).

[5]Tinel's sign is a tingling sensation in . . . an extremity in response to pressure . . . over the site of a partially divided nerve; it signifies regeneration of a nerve. BLAKISTON'S GOULD MEDICAL Dictionary at 1378 (4th ed. 1979).

8

mitral valve prolapse, fibromyalgia and sleep apnea. As Plaintiff was without insurance, Dr. Awerbuch recommended weight loss as an alternative treatment. (Tr. at 201.)

On December 3, 2002, Plaintiff was seen by Dr. Awerbuch for her continuing fibromyalgia pain, fatigue and weakness. She also reported intermittent chest pain, vertigo and sleep disturbances. On examination, her heart revealed regular rhythm with a soft mitral click. Dr. Awerbuch again stated that she had 14 tender trigger points meeting the criteria for fibromyalgia. He recommended referral to rheumatology, and stated that Plaintiff would benefit from therapy, an MRI and further testing. The doctor again stated that Plaintiff should limit her activities, and that "I do not believe she is capable of working on a regular and sustained bases and she is applying for Social Security Disability." (Tr. at 200.)

On December 31. 2002, Dr. D. D. Shrestha, M.D., reported that x-rays of Plaintiff's left knee revealed extensive degenerative changes, osteopenia,[6] and small to moderate joint effusion, all as a result of a fall. He stated that if symptoms persisted, an MRI or bone scan could be obtained. (Tr. at 193.)

Plaintiff was seen by Dr. Awerbuch on May 19, 2003, with significant pain in her neck and shoulders. She reported that she was still suffering with depression, problems sleeping, chronic fatigue, and poor concentration. She also reported episodes of vertigo and problems balancing. The doctor prescribed Paxil and pain medication. Examination revealed restricted cervical motion and trigger points and spasms in the neck and shoulders. Tinel's sign was positive, and she had problems with grasping and gripping. Dr. Awerbuch diagnosed fibromyalgia, mitral valve

---

[6]Osteopenia is a condition marked by a deficiency of bone; the presence of less than the normal amount of bone. 3 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE O-90.

prolapse, bilateral carpal tunnel syndrome, chronic neck pain, chronic vertigo, obstructive sleep apnea, memory loss, fatigue and cognitive impairment. (Tr. at 199.)

Plaintiff was seen again on August 13, 2003, by Dr. Awerbuch for continued fibromyalgia pain, sleep problems, fatigue, ongoing wrist, hand and neck pain, and vertigo. Examination again revealed 14 tender trigger points, positive Tinel's sign, and reduced cervical range of motion. Plaintiff was given sample medications and was advised to limit her strenuous activities. (Tr. at 206.)

At the administrative hearing, a vocational expert (VE) testified. She characterized Plaintiff's prior work as a certified nursing aide to be heavy in exertion. (Tr. at 241.) Plaintiff's prior work as a stand-by assistant was characterized as light in exertion. (*Id.*) In response to a hypothetical question presuming a person of Plaintiff's circumstances who would be able to undertake sedentary work which could be done either sitting or standing and which required no repetitive bending or twisting, pushing, pulling, crawling, kneeling or climbing, and limited contact with the public, the VE testified that there were no jobs in the regional economy to which Plaintiff's skills would transfer. (Tr. at 243.) In response to a hypothetical question presuming the ability to undertake light work with similar restrictions, the VE identified 6,000 inspecting jobs, 1,500 sorting jobs, and 3,780 supply clerk jobs consistent with these hypothetical conditions. (*Id.*)

**E.   ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 29.) At step two, the ALJ found that Plaintiff's impairments were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the

regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform her past relevant work. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 30.)

Using the Commissioner's grid rules as a guide, the ALJ found that:

> . . . there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as inspector (6000), sorter (1500) and supply clerk (3780). The vocational expert verified that the cited jobs in the region generally conform to the descriptions in the Dictionary of Occupational Titles.

(*Id.*)

### F.   Analysis and Conclusions

### 1.   Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a significant range of light work. (Tr. at 30.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

It is well settled in this circuit that a treating physician's opinion, when based upon objective evidence, is accorded significant weight. If adequately supported by objective findings, and if uncontradicted, the physician's opinion is entitled to complete deference. *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985); *King v. Heckler*, 742 F.2d 968 (6th Cir. 1984); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983); *Reed v. Sec'y of Health & Human Servs.*, 804 F. Supp. 914 (E.D. Mich. 1992).

On this record, every physician who examined or treated Plaintiff found evidence of significant impairments. Dr. Awerbuch consistently found trigger points consistent with fibromyalgia. Dr. Awerbuch consistently reported results consistent with carpal tunnel syndrome. ENG testing indicated the presence of a lesion in the vestibular nerves consistent with Plaintiff's complaints of dizziness. A polysomnogram found evidence consistent with sleep apnea. Dr. Awerbuch repeatedly found evidence of cardiac irregularities. The x-rays reviewed by Dr. Shrestha found evidence of considerable trauma and degeneration in Plaintiff's knee. None of this evidence, I suggest, is consistent with the ALJ's residual functional capacity assessment for light work, and compels the conclusion that substantial evidence fails to support the ALJ's assessment.

The Commissioner argues that the ALJ properly discounted Dr. Awerbuch's December 2002 opinion that Plaintiff could not return to gainful employment, pointing to the doctor's reference that Plaintiff was applying for social security disability benefits. (Tr. at 200.) This argument overlooks the fact that Dr. Awerbuch rendered similar opinions on more than one occasion, as early as mid-January 2002. (Tr. at 202-03.)

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. In this circuit, the latter option requires that the "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking[,]" *Mowery v. Heckler* 771 F.2d 966, 973 (6th Cir. 1985); or that "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits[.]" *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). I suggest that on this record, the requirements set forth in this circuit for the latter option have been met and that a remand to the Commissioner for an award of benefits is appropriate.

**III.   REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the

13

objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/ *Charles E. Binder*
                                            CHARLES E. BINDER
Dated: July 7, 2005                          United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on James A. Brunson, John L. Wildeboer and Honorable David M. Lawson.

Dated: July 7, 2005                          By    s/Mary E. Dobbick
                                                        Secretary to Magistrate Judge Binder