UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LINDA M. PORTWOOD,

        Plaintiff,                        Case Number 04-10292-BC
                                                     Honorable David M. Lawson

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING MATTER TO THE COMMISSION FOR AN AWARD OF BENEFITS**

The plaintiff filed the present action on October 19, 2004 seeking review of the Commissioner's decision denying the plaintiff's claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and award her benefits. The defendant filed a motion for summary judgment requesting affirmance of the decision of the Commissioner. Magistrate Judge Binder filed a report on July 7, 2005 recommending that the plaintiff's motion for summary judgment be granted, the defendant's motion for summary judgment be denied, the findings of the Commissioner be reversed, and the matter be remanded to the Commission for an award of benefits. The defendant filed timely objections to the recommendation, the plaintiff filed a response to the objections, and the defendant filed a reply. This matter is now before the Court.

The Court has reviewed the file, the report and recommendation, the defendant's objections, the plaintiff's responses thereto, and the defendant's reply and has made a *de novo* review of the administrative record in light of the parties' submissions. As an initial matter, the plaintiff contends that the objections were untimely because they were filed more than ten calendar days after the magistrate judge's report was filed and therefore exceeded the time permitted by 28 U.S.C. § 636(b)(1). However, as the defendant points out, the time calculation for periods of less than eleven days does not include "intermediate Saturdays, Sundays, and legal holidays," and the initial day is not included either. Fed. R. Civ. P. 6(a). The report was filed on Thursday, July 7, 2005, and the objections were filed on Wednesday, July 20, 2005, nine weekdays later. The objections, therefore were timely.

In her objections, the defendant challenges the magistrate judge's conclusion that substantial evidence did not support the Administrative Law Judge's (ALJ) determination that the plaintiff was not disabled as a result of her physical and mental impairments and contends that the magistrate judge should not have found that the ALJ violated the so-called treating physician rule. Specifically, the defendant insists that the magistrate judge improperly criticized the ALJ for rejecting the opinion by Dr. Gavin Awerbuch, the plaintiff's treating neurosurgeon, that the plaintiff could not work at any sustained activity. The defendant also argues that even if substantial evidence does not support the ALJ's finding of non-disability, the case should be remanded for further proceedings, not an award of benefits as recommended by the magistrate judge.

The plaintiff, who is now fifty-four years old, applied for a period of disability and disability insurance benefits on October 31, 2001 when she was fifty years old. She completed high school, obtained a certificate as a nursing assistant, and then worked continuously for the past thirty years

as a nursing assistant in various nursing homes. She worked for twenty-two years for her first employer performing patient care that included lifting and bathing patients. Her next jobs with employers for approximately five and three years, respectively, required progressively less lifting in accordance with the plaintiff's increasing physical limitations, until she was asked to leave her last job because, as she was told, she could no longer perform her work properly.

The plaintiff last worked on May 21, 2001, the date she alleges she became disabled as a result of muscle ligament disorder, dizziness and vertigo, fibromyalgia, fatigue, and anxiety related disorders. The record reflects that plaintiff returned to work in June 2002 but quit that same month because of her limitations. The ALJ subsequently found this period of employment to be an unsuccessful work attempt. Doctors have diagnosed vertigo, bilateral carpal tunnel syndrome, mitral valve prolapse, fibromyalgia, obstructive sleep apnea with periodic leg movements, degenerative changes in the left knee, depression, and panic and personality disorders.

The plaintiff's application for disability insurance benefits was denied initially. The Commissioner did not entertain a request for reconsideration because the case was processed under a procedural experiment. *See* 20 C.F.R. §§ 404.906 & .906(b)(4). The plaintiff made a timely request for an administrative hearing. On August 25, 2003, she appeared before ALJ John A. Ransom when she was fifty-two years old. ALJ Ransom filed a decision on November 12, 2003 in which he found the plaintiff was not disabled. The ALJ reached that conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520. The ALJ concluded that the plaintiff had not engaged in substantial gainful activity since May 21, 2001, although subsequently she had made an unsuccessful attempt at work (step one); the plaintiff suffered from fibromyalgia, mitral valve prolapse, bilateral carpal tunnel syndrome, neck pain, chronic vertigo,

obstructive sleep apnea, degenerative changes in the left knee, depression, and panic and personality disorders, impairments which were "severe" within the meaning of the Social Security Act (step two); none of these impairments alone or in combination met or equaled a listing in the regulations (step three); and the plaintiff could not perform her previous work as a nursing assistant, which was semi-skilled and variously required heavy to light exertion (step four).

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity to perform a limited range of unskilled, light work with the following restrictions: an option to sit or stand; tasks that involve no repetitive bending, twisting, turning, pushing, pulling, gripping, grasping, crawling, squatting, kneeling, or climbing; and no more than limited contact with the public. A vocational expert testified that several jobs fit within these limitations, including inspector, sorter, and supply clerk, and the ALJ found that those jobs existed in significant numbers in the national economy. Based on that finding and using Medical Vocational Rule 202.14 as a framework, the ALJ found that the plaintiff was not disabled within the meaning of the Social Security Act. Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied the plaintiff's request for review on August 20, 2004.

In her motion for summary judgment, the plaintiff argued that the ALJ improperly disregarded the uncontested opinion of the plaintiff's treating neurologist, Dr. Awerbuch. Dr. Awerbuch treated the plaintiff for her various complaints after a referral from a family doctor beginning in April 2001. Dr. Awerbuch diagnosed fibromyalgia after detecting twelve to fourteen positive tender trigger points, noting the absence of sensitivity at the control trigger points, and performing medical testing. Following a sleep study, he diagnosed sleep apnea with periodic limb movements. He ordered an ENG examination, which suggested a lesion of the right labyrinth or

vestibular nerve, and he confirmed a diagnosis of chronic vertigo.  In a note dated January 17, 2002,

Dr. Awerbuch stated:

> She continues to have generalized myofascial pain, trouble with sleep, cognitive deficits and fatigue.  She has to lay down several times per day.  Her hands go numb.  She has limited ability to function at home. . . . She was advised to limit her activities and rest as appropriate.  She should avoid driving, dangerous activities, climbing, working at heights, etc. due to her vertigo and fatigue.

Tr. at 203.  Three months later, on April 22, 2002, the examination note states:

> She complains of chronic pain and fatigue, and has to lay down frequently.  She has difficulty with sustained attention and concentration. . . . She has recurrent bouts of vertigo, and at times, this is disabling to the point that she has to lay down.  She also has trouble driving because if she turns her head to look behind, the vertigo occurs. . . .  On exam, there are multiple tender trigger points, consistent with her fibromyalgia.  The patient has trouble performing tandem.  Heart is regular in rhythm and rate.  There is a soft mitral click.
> . . .
> *Due to her multiple problems, I do not feel that she is capable of gainful employment on a ongoing basis.  She needs to lay down and rest during the day.  She should also take caution when performing activities where she could potentially harm herself or others if she were to become vertiginous.*  She will continue to use carpal tunnel splints.  Followup [sic] visit will be planned.

Tr. at 202 (emphasis added).

Dr. Awerbuch continued to treat the plaintiff periodically.  His note of August 19, 2002

states:

> Linda was seen today.  She still is having a lot of muscle spasms in her neck, arms, and legs but feels that medicines are helping.  She still has tingling and numbness of her hands.  Her vertigo seems to be better at this point, although this still occurs sporadically. . . . She is using Antivert for the vertigo, which is helping.  I have given her samples of Bextra and Skelaxin.  I have encouraged her to lose weight since she cannot afford to have the CPAP unit as an alternative treatment.

Tr. at 201.  Dr. Awerbuch next saw the plaintiff on December 3, 2002.  The note from that visit,

upon which the ALJ focused, states:

> She is still having fibromyalgia pain, fatigue and weakness. She has intermittent chest pain. She has vertigo that often will cause her to lose her balance. She does not sleep well through the night. She has no insurance and cannot undergo further testing or treatment. I have been providing samples to her. She has noted some lumps and possibly could have polyarteritis nodosum.
>
> On exam, she is awake and alert. Heart; regular rhythm and rate. There is a soft mitral click. She has 14 tender trigger points and tends to stagger. *Head turning does cause vertigo.* There are no other changes.
> . . .
> I have recommended a rheumatology referral. She would benefit from therapy, possibly an MRI, further testing, etc. I have given her samples of Arthrotec and Neurontin to try for her chronic fibromyalgia pain. *She should limit her activities. I do not believe she is capable of working on a regular and sustained basis* and she is applying for Social Security Disability. Follow up visit will be planned, or she may call sooner if needed.

Tr. at 200 (emphasis added).

The ALJ did not accept Dr. Awerbuch's opinions that the plaintiff could not work because, he wrote, the work restrictions cited in January 2002 would not preclude all work; the December 3, 2002 opinion referenced an application for Social Security disability benefits and therefore was suspect; the December 2002 opinion was inconsistent with previous statements of limitations, in the ALJ's view; and the doctor's opinion was not based on objective evidence or objective testing. Tr. at 25. The magistrate judge agreed with the plaintiff that the ALJ's conclusions were not supported by the record.

All parties agree with the magistrate judge that the plaintiff has the burden of proving disability in order to qualify for social security disability benefits, and that "disability" is defined as the "inability to engage in any substantial gainful activity" due to a "physical or mental impairment" that could cause death or might reasonably be expected to last continuously for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A). Of course, a person is not disabled merely because her limitation prevents her from performing previous work, if that person can perform other

"substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The parties also accept the rule that the authority of this Court to review administrative decisions of the Commissioner is limited to deciding whether the proper legal standards were used and "whether there is substantial evidence in the record to support the findings." *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 851 (6th Cir. 1986)). The plaintiff takes issue with the application of this rule, however, arguing that the ALJ culled from the record only that evidence which favored a determination of no disability, violating the familiar instruction that a decision can not be based on a single piece of evidence in disregard of other pertinent evidence that exists in the record, *see Hephner v. Matthews,* 574 F.2d 359, 362 (6th Cir. 1978), and that "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotations omitted).

The standard of review of an ALJ's decision is deferential, and the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kirk v. Sec. of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). However, a substantiality of evidence evaluation does not permit a selective reading of the record. *See Laskowski v. Apfel,* 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000). If the Commissioner's determination is not supported by substantial evidence on the whole record, the administrative decision must be reversed and the case remanded for further action. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 242-43 (6th Cir. 2002).

The plaintiff in this case asserts that the opinion of Dr. Awerbuch conclusively establishes that the plaintiff is disabled within the meaning of the Act and that the ALJ was bound by that opinion, a view to which the magistrate judge subscribed. The Rule promulgated by the Secretary of Health and Human Services states that "more weight [will be given] to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). The Sixth Circuit has consistently applied this rule. A treating physician's opinion should be given greater weight than those opinions of consultative physicians who are hired for the purpose of litigation and who examine the claimant only once. *See Jones v. Sec.'y of Health & Human Servs.,* 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985). If a treating physician's opinion is not contradicted, complete deference must be given to it. *Walker v. Sec'y of Health & Human Servs.,* 980 F.2d 1066, 1070 (6th Cir. 1992); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984). However, a treating physician's opinion may be rejected if there is good reason to do so. *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir. 1988). The Sixth Circuit has held that treating physicians' opinions "are only given such deference when supported by objective medical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 378, 390 (6th Cir. 2004) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F. 3d 469, 477 (6th Cir. 2003). Where a treating physician renders an opinion using legal language as opposed to medical terminology, the Court may likewise reject it if it is not supported by clinical evidence in the record. *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1234-35 (6th Cir. 1993).

The ALJ's reasons for rejecting Dr. Awerbuch's opinion that the plaintiff cannot work attempt to track the grounds noted above for justifying a departure from the treating physician rule, but those reasons do not withstand analysis against the factual record. Dr. Awerbuch's opinions about the plaintiff's physical limitations were consistent throughout his treatment relationship. In January 2002 he advised her to limit her activities due to, among other things, vertigo and dizziness. He did not say that she could not work at all, but then he did not say that she could. Rather, he instructed the plaintiff to "limit her activities and rest as appropriate." Tr. at 203. In April 2002, well before the spectre of a Social Security disability claim emerged, Dr. Awerbuch noted that the plaintiff had recurrent bouts of vertigo when she turned her head, the dizziness was disabling and the plaintiff could cope only by laying down, and these disabilities prevented her from engaging in any "gainful employment on an ongoing basis." Tr. at 202. This observation is sensible, logical, and confirmed by objective testing and clinical examination: if the plaintiff is chronically dizzy – which one might expect with a vestibular nerve lesion – she must lay down during the day as needed, which likely would not fit into any employer's schedule, as the vocational expert confirmed at the administrative hearing. *See* Tr. at 242. Dr. Awerbuch's note of August 19, 2002 stated that the plaintiff's use of medication helped her dizziness, but that improvement did not carry through to the December 3, 2002 visit, at which time Dr. Awerbuch *again* stated that the plaintiff had to limit her activities, and *again* stated that she could not perform any work.

The plaintiff's chronic dizziness was documented on physical examination, *see* Tr. at 200, and objective medical testing gave a physiological basis for this symptom. *See* Tr. at 136. Dr. Awerbuch's opinions appear to be consistent throughout the record. Although Dr. Awerbuch did mention the plaintiff's application for Social Security disability benefits in his December 2002 note,

his conclusion was the same as the one he reached eight months earlier before the existence of any motivation to shade or slant his opinion. The Court agrees with the magistrate judge that the ALJ's reasons for failing to apply the treating physician rule are not good ones.

The Sixth Circuit has held that reversal of a denial of benefits is required in a Social Security disability benefits case where the ALJ rejects a treating physician's opinion as to the restrictions on a claimant's ability to work and fails to give good reasons for not giving weight to the opinion. *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). There, the court stated that "pursuant to [20 C.F.R. § 404.1527(d)(2)], a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

Likewise, in this case, the ALJ's reasons are not supported by the evidentiary record, and therefore there is an inadequate basis to reject the treating physician's opinion.

According to the treating physician, the plaintiff cannot work on a "regular and sustained basis"; she must lie down and rest during unpredictable intervals throughout the day because of her fatigue and vertigo. Tr. at 200. The plaintiff testified to that limitation at the administrative hearing, but the ALJ did not accept that testimony as fully credible. However, there is no contrary medical evidence that suggests that the plaintiff can function throughout an entire day without the need to take such rest breaks. A medical report in the record from a Dr. Thomas dated January 30, 2002 states that the plaintiff can stand, walk, and sit for six hours of an eight-hour day. *See* Tr. at 148-55. However, that report apparently was completed without an examination of the plaintiff, and the

record reviewer did not have access to Dr. Awerbuch's physical assessment. Moreover, the ALJ himself discounted the opinions of the state agency physicians because they were non-treating and non-examining sources, and "their assessment of the claimant's residual functional capacity is inconsistent with the objective evidence of record." Tr. at 27. The defendant contends that the ALJ's rejection of the consultative physicians' opinions is a "misstatement" or a "typographical error." That argument is difficult to accept since the statement is contained in a written opinion and clearly sets forth the position and reasoning of its author.

The defendant also argues that Dr. Awerbuch's opinion is contradicted by the plaintiff's own reports of her activities. Indeed, the ALJ concluded that the plaintiff enjoyed "an active lifestyle for an unemployed person." Tr. at 27. However, a fair, objective, and non-selective reading, *see Garner*, 745 F.2d at 388 (stating that "'the substantiality of evidence must take into account whatever in the record fairly detracts from its weight'"), of the plaintiff's daily activity forms do not support the ALJ's characterization. These forms report activities consisting of taking medications, resting, performing light household chores between periods of rest, watching television, having neighbors in for a visit, writing letters, interrupted sleep, shopping, and putting away purchases with help. Tr. at 79-81. The ALJ was critical of the plaintiff for partaking in a "full body massage," but the report of that activity in context during the July 24 through 26, 2003 report period shows that it occurred among periods of medication-taking, resting due to dizziness, lying down on a futon, sitting on a porch swing, reading the paper, and sleeping on and off. *See* Tr. at 102-04. The massage was obtained from "massage therapy" during a time when the plaintiff was without insurance to obtain other types of palliative care. Characterizing this lifestyle as "active" is a distortion of the record, which does not in its entirety support the ALJ's conclusion.

The Court agrees with the magistrate judge that the ALJ's conclusion is not supported by substantial evidence. The defendant contends that under such circumstances the Court should remand for further proceedings. Once the determination has been made that the Commissioner's decision is not supported by substantial evidence, the Court must decide whether further fact-finding is required. "[I]f all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits," this Court may remand for an award of benefits. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994); *see also Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985) (holding that "[i]n cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking").

The Court believes that the factual record in this case is adequate. The treating physician's opinion demonstrates the plaintiff's inability to work on a sustained basis without the need for breaks to contend with her chronic vertigo and fatigue. The vocational expert was asked by the ALJ hypothetically whether the plaintiff could perform her past work or any other work if she suffered from the limitations she described. The vocational expert responded:

> No to her past work, and – or any other of [sic] work, because of the number of reasons that she stated. That she needs to lie down a number of times throughout the day, she's not able to any [sic] lifting, and that when the dizzy – when the vertigo over – comes over her she's not able to do anything.

Tr. at 242. It appears, therefore, that the Commissioner will not be able to meet her step-five burden. *See Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (holding that if the plaintiff has satisfied his burden through the first four steps of the analytical process, the burden shifts to the Commissioner to establish that the plaintiff possesses the residual functional capacity

to perform other substantial gainful activity). As a consequence, the Court finds that proof of disability is strong and contrary evidence is lacking, and a remand for benefits, as recommended by the magistrate judge, is appropriate.

After a *de novo* review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching his conclusion. The Court has considered all of the defendant's objections to the report and finds them to lack merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt # 19] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 12] is **GRANTED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 18] is **DENIED**. The findings of the Commissioner are **REVERSED,** and the matter is **REMANDED** to the Commission for an award of benefits.

                                                s/David M. Lawson
                                                DAVID M. LAWSON
                                                United States District Judge

Dated: October 13, 2005

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 13, 2005.

        s/Tracy A. Jacobs
        TRACY A. JACOBS